UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| WENDY BARBIERI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:15-CV-146-TAV-CCS |
| | ) | |
| KNOX COUNTY, | ) | |
| JIMMY "J.J." JONES, Sheriff of Knox County, | ) | |
| in his individual capacity, | ) | |
| J. CLAY ATHERTON, with the Knox County | ) | |
| Sherriff's Office, in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

This civil matter is before the Court on defendant Knox County's Motion to Dismiss [Doc. 8], and on defendant Sheriff Jimmy "J.J." Jones's Motion to Dismiss [Doc. 9]. Plaintiff responded to each of these motions [Docs. 12, 13]. After careful consideration of the complaint and the relevant law, the Court will grant in part and deny in part Knox County's Motion to Dismiss [Doc. 8], and will grant Sheriff J.J. Jones's Motion to Dismiss [Doc. 9]. Specifically, the Court will dismiss the following claims: (1) plaintiff's § 1983 claims against Sheriff J.J. Jones, (2) plaintiff's state-law claims against Sheriff J.J. Jones, (3) plaintiff's negligence claim against Knox County, (4) plaintiff's negligence *per se* claim against Knox County, (5) plaintiff's negligent infliction of emotional distress claim against Knox County, (6) plaintiff's negligent hiring, training, supervision, and retention claim against Knox County, and (7) plaintiff's GTLA claims against Knox County.

## I. Background[1]

On April 10, 2014, plaintiff was at her home, 541 Hidden Grove Road, Knoxville, Tennessee 37934, when she heard the doorbell ring [Doc. 1 ¶ 7]. She was home alone at the time [*Id.* ¶ 7]. She looked out the window, saw two law enforcement officers, and then she opened the door [*Id.* ¶¶ 8–9]. She contends that after she opened the door, one of the officers, defendant J. Clay Atherton, immediately became hateful, rude, and belligerent [*Id.* ¶ 9]. Plaintiff asked if she could assist the officers with anything [*Id.*]. The officers told plaintiff that they were looking for her husband, Pete Barbieri [*Id.* ¶ 11]. Plaintiff told the officers that he was not home [*Id.* ¶ 12]. The officers then requested permission to enter her home and plaintiff refused [*Id.*]. During this exchange, Atherton first had his hand on his gun and he later pointed it at plaintiff [*Id.* ¶ 10].

Atherton stated that the officers had a warrant for Pete Barbieri, but plaintiff alleges that Atherton refused to show any paperwork [*Id.* ¶ 13]. According to plaintiff, Atherton then stated "we don't have to show you anything" [*Id.*]. Plaintiff again stated that the officers were not allowed to enter her home and Atherton responded by saying "oh, yes we are!" [*Id.* ¶ 14]. Plaintiff claims that Altherton then "power drove" right through plaintiff, causing plaintiff to hit her head on the steel front door [*Id.* ¶ 15]. The other officer had a look of disbelief after seeing Atherton's actions [*Id.*].

---

[1] For the purposes of the motions to dismiss, the Court takes plaintiff's factual allegations as true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint" (citations omitted)).

Once inside, Atherton began searching the home [*Id.* ¶ 16]. Plaintiff again asked to see a warrant [*Id.* ¶ 17]. Altherton then showed her papers that had an address of 624 Spring Branch Lane, which was not plaintiff's home address [*Id.*]. When plaintiff told Atherton that they were at the wrong home, Atherton exclaimed "that sh—don't matter because it's an arrest warrant!" [*Id.* ¶ 18]. While searching the premises, Atherton stated that "we got us another grow room" [*Id.* ¶ 19]. Plaintiff responded by saying that she "had no idea what he was referring to," and Atherton then bellowed out "don't play with us!" [*Id.*].

Throughout the course of the four-hour search, approximately twenty officers arrived and stayed in and outside plaintiff's home [*Id.* ¶ 20]. According to plaintiff, throughout those four hours, she was repeatedly threatened and coerced by several of the officers [*Id.* ¶ 21]. Plaintiff alleges that the officers present conspired to violate her civil rights because they failed to report unlawful actions of their fellow officers, failed to properly document the unlawful actions of their fellow officers, and continued to protect the officers who abused plaintiff [*Id.*]. Plaintiff also contends that Knox County failed to investigate this matter [*Id.*]. She alleges that the officers were following the illegal practices, policies, and/or customs in place at the Knox County Sheriff's Department whereby employees would commit constitutional violations [*Id.* ¶ 29].

Plaintiff filed suit against Knox County, Sheriff J.J. Jones, and J. Clay Atherton [*Id.* ¶¶ 4–6]. She is alleging 18 U.S.C. § 1983 claims for the deprivation of various constitutional rights against all defendants [*Id.* ¶ 2]. She is also alleging various state-law

3

claims including: negligence; negligence *per se*; invasion of privacy; negligent and intentional inflication of emotional distress; negligent hiring, training, supervision, and retention; false imprisonment; common law trespass; gross negligence, intentional, willful, reckless, and wanton misconduct; and Government Tort Liability Act claims [*Id.* ¶¶ 51–90]. Defendants Knox County and Sheriff J.J. Jones filed motions to dismiss all claims against them [Docs. 8, 9].

II.     **Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) sets out a liberal pleading standard, *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004), requiring only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests,'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Twombly*, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action will not do," neither will "'naked assertion[s]' devoid of 'further factual enhancement[,]'" nor "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, draw all

4

reasonable inferences in favor of the plaintiff, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will [ultimately] . . . be a context-specific task that requires th[is Court] to draw on its judicial experience and common sense." *Id.* at 679.

## III.  Knox County

Knox County filed a motion to dismiss all 42 U.S.C. § 1983 claims and all state-law claims against it.

### A.  Section 1983 Claims

Knox County contends that plaintiff's § 1983 claim must be dismissed for failure to state a claim. The municipality asserts that plaintiff's federal claims against Knox County consist of conclusory allegations and are not sufficiently supported by facts. Knox County also argues that plaintiff is attempting to impose improper *respondeat superior* liability on the municipality.

A municipality may not be held liable under 42 U.S.C. § 1983 "for an injury inflicted solely by its employees or agents." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent

5

official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Accordingly, to succeed on a municipal liability claim under § 1983, a plaintiff "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell*, 436 U.S. at 694).

The policy or custom of the municipality must evince a deliberate indifference to the rights of persons with whom police officers come into contact. *See Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410–11 (1997) (applying the deliberate indifference standard to employment decision claims); *City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (applying the deliberate indifference standard to failure to train claims). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410. "[A] plaintiff ordinarily cannot show that a municipality acted with deliberate indifference without showing that the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (citations omitted).

In other terms, a plaintiff asserting a § 1983 claim on the basis of a custom or policy must identify the policy, connect the policy to the municipality, and demonstrate that the injury was incurred because of the execution of the policy. *Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 383 (6th Cir. 2004). "There must 'a direct causal link' between the policy and the alleged constitutional violation such that the [county's]

6

'deliberate conduct' can be deemed the 'moving force' behind the violation." *Id.* (citation omitted).

Plaintiff alleges that there were unlawful practices, policies and/or customs in place in Knox County and the officers complied with such practices when performing the actions at issue in this case [Doc. 1 ¶¶ 33, 40]. Consequently, plaintiff's claim is not based on a theory of *respondeat superior*. Rather, plaintiff asserts that her injury occurred because the municipal's policy or custom.

Plaintiff also alleges that these practices, policies, and customs in place encourage constitutional violations, including: illegally entering the homes of citizens and the use of excessive force, among other practices [*Id.* ¶ 33]. Plaintiff provides detail on the specifics of the policies, and emphasizes that Knox County sanctioned, ordered, and acquiesced in the unconstitutional policies [*Id.* ¶ 36]. Furthermore, plaintiff has made allegations regarding previous unconstitutional conduct by Atherton, specifically excessive force, illegal search and seizures, and untruthfulness, of which Knox County was aware and ignored [*Id.* ¶ 37]. These alleged statements are not mere conclusory allegations, and plaintiff has alleged sufficient facts to support the inference that Knox County had policies or customs that evince a deliberate indifference to the rights of persons with whom police officers come into contact.

In light of these standards, and taking the allegations as true, the Court finds plaintiff's complaint has sufficiently pled a plausible claim for relief under § 1983.

7

## B. State-Law Claims

Regarding plaintiff's state-law tort claims, Knox County asserts that it retains immunity under the Tennessee Governmental Tort Liability Act ("GTLA") because such state-law claims arise out of the same circumstances giving rise to plaintiff's federal civil-rights claim. In response, plaintiff contends that the state-law tort claims are viable because plaintiff may recover pursuant to Tenn. Code Ann. § 8-8-302.

The GTLA provides that "all governmental entities shall be immune from suit for any injuries which may result from the activities of such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201. "Governmental entity" is defined as "any political subdivision of the state of Tennessee." *Id.* § 29-20-102(3)(A). The GTLA removes immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment." *Id.* § 29-20-205. There is an exception to this removal of immunity whereby immunity is retained where injuries arise out of "false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right of privacy, or civil rights." *Id.* § 29-20-205(2). The civil-rights exception "has been construed to include claims arising under 42 U.S.C. § 1983 and the United States Constitution." *Johnson v. City of Memphis*, 617 F.3d 864, 872 (6th Cir. 2010) (citation omitted). Claims arising out of the same set of circumstances as a civil-rights § 1983 claim also fall under this exception.

8

*See Johnson*, 617 F.3d at 872 (finding the plaintiff's negligence claim against a city barred under the GTLA because it arose out of the same circumstances giving rise to the plaintiff's civil rights claim under § 1983).

Plaintiff asserts that Tenn. Code Ann. § 8-8-302 nevertheless provides grounds for relief. Section 8-8-302 provides that:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided, that the deputy is, at the time of such occurrence, acting by virtue or under color of the office.

Tenn. Code Ann. § 8-8-302. "The [GTLA] superseded this statute as it relates to actions based on negligence, but this statute still controls as to suits for intentional acts of official misconduct by sheriff's deputies." *Hunt v. Wayne Cnty.*, No. 1-10-0035, 2012 WL 279482, *7 (M.D. Tenn. Jan. 31, 2012) (citing *Jenkins v. Loudon Ctny.*, 736 S.W.2d 603, 609 (Tenn. 1987), *abrogated on other grounds by Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73 (Tenn. 2004)). A county may be civilly responsible under Tenn. Code Ann. § 8-8-302 for injuries caused by deputies provided that the injury-causing actions were "non-negligent." *Menick v. Metro. Gov't of Nashville & Davidson Ctny.*, No. 3:12-cv-0524, 2015 WL 796667, at *2 (M.D. Tenn. Feb. 25, 2015) (citing Tenn. Code Ann. § 8-8-302; *Jenkins*, 736 S.W.2d 603).

Plaintiff alleges both negligent and non-negligent state-law tort claims against Knox County. She asserts the following claims on a negligence theory: negligence; negligence *per se*; negligent infliction of emotional distress; negligent hiring, training,

supervision, and retention.  All of these claims fall within the province of Tenn. Code Ann. § 29-20-205(2) because the claims ascend out of the same circumstances giving rise to plaintiff's § 1983 civil-rights claim.  Plaintiff does not allege any new or different facts in support of her state-law claims.  She instead refers to the same actions detailed in support of her civil-rights claim.  The Court will, therefore, dismiss plaintiff's state-law claims based on a theory of negligence because Knox County retains immunity under the GTLA and plaintiff may not allege a claim under section 8-8-302.  *See Johnson*, 617 F.3d at 872.

Plaintiff asserts the following claims based on non-negligent tort theory: invasion of privacy; intentional infliction of emotional distress; false imprisonment; trespass; intentional, willful, reckless, and wanton misconduct; and gross negligence.  *See Byers v. Middle Tenn. Elec. Membership Corp.*, 467 F.2d 641, 643 (6th Cir. 1972) (differentiating between negligence and gross negligence); *see also Adams v. Roark*, 686 S.W.2d 73, 74 (Tenn. 1985) (finding that gross negligence did not fall within the definition of negligence in a contract dispute); *Inter-City Trucking Co. v. Daniels*, 178 S.W.2d 756, 757 (Tenn. 1944) (defining gross negligence as "such entire want of care as would raise a presumption of conscious indifference to consequences").  The Court finds that, while immune under the GTLA, Knox County can be held liable for its deputies' alleged non-negligent tort actions under section 8-8-302.  *Menick*, 2015 WL 796667, at *2.  Knox County's request to dismiss the non-negligent state-law claims against it will be denied.

10

Plaintiff also has a portion of her complaint entitled Governmental Tort Liability Act. The Court finds that plaintiff cannot bring any of her alleged state-law claims under the GTLA, and as discussed herein, plaintiff may only bring the retained claims under Tenn. Code. Ann. § 8-8-302.

The Court will, therefore, dismiss plaintiff's claims of negligence, negligence *per se*, negligent infliction of emotional distress, negligent hiring, training, supervision, and retention against Knox County.

## IV. Sheriff Jimmy "J.J." Jones in His Individual Capacity

Sheriff J.J. Jones filed a motion to dismiss all 42 U.S.C. § 1983 claims and all state-law claims against him.

### A. Section 1983 Claims

Sheriff J.J. Jones moves to dismiss plaintiff's § 1983 claims against him in his individual capacity for failure to state a plausible claim to relief and based on qualified immunity.[2]

Similar to municipalities, government officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates on a theory of *respondeat superior*. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *see Iqbal*, 556 U.S. at 676 (discussing the rule in the context of a *Bivens* action). Rather, in order to prevail against a supervisory official under § 1983, a plaintiff must show that the supervisor actively

---

[2] The Court need not reach the question of whether Sheriff J.J. Jones is entitled to qualified immunity because the Court finds that the § 1983 against Sheriff J.J. Jones should be dismissed for failure to state a plausible claim for relief.

11

participated in, or "encouraged or condoned," the unconstitutional actions of a subordinate. *Bass*, 167 F.3d at 1048.

Thus, "[l]iability under this theory must be based upon more than a mere right to control employees and cannot be based upon simple negligence." *Id.* (citing *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). Additionally, a plaintiff must show that the supervisor "did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on." *Id.* (citations omitted). "At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982) (citing *Leite v. City of Providence*, 463 F. Supp. 585 (D.R.I. 1978)).

In light of these standards, and taking the allegations as true, the Court finds plaintiff's complaint contains conclusory allegations as to Sheriff J.J. Jones's liability and is devoid of facts to support such conclusions. Plaintiff's allegations regarding Sheriff J.J. Jones constitute allegations of the elements required, namely, that he encouraged, condoned, and was personally involved in the unconstitutional conduct of his subordinates. These blanket conclusions, absent any facts in support of them, are insufficient to state a plausible claim for relief. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 557. Plaintiff does not provide any facts regarding Sheriff J.J. Jones's specific involvement in this matter or even in the general policy making. The Court will dismiss plaintiff's § 1983 claim against Sheriff J.J. Jones.

### B. State-Law Claims

Plaintiff concedes that Tenn. Code Ann. § 8-8-301 provides immunity to defendant Sheriff J.J. Jones as to plaintiff's state-law claims and agrees that these claims should be dismissed. The Court will dismiss all of plaintiff's state-law claims against Sheriff J.J. Jones.

## V. Conclusion

For these reasons, the Court **GRANTS in part** and **DENIES in part** the motion to dismiss filed by Knox County [Doc. 8]. Additionally, the Court **GRANTS** the motion to dismiss filed by Sheriff J.J. Jones [Doc. 9]. Accordingly, the following claims in plaintiff's complaint are hereby **DISMISSED**: (1) plaintiff's § 1983 claims against Sheriff J.J. Jones in his individual capacity, (2) plaintiff's state-law claims against Sheriff J.J. Jones in his individual capacity, (3) plaintiff's negligence claim against Knox County, (4) plaintiff's negligence *per se* claim against Knox County, (5) plaintiff's negligent infliction of emotional distress claim against Knox County, (6) plaintiff's negligent hiring, training, supervision, and retention claim against Knox County, and (7) plaintiff's GTLA claims against Knox County.

IT IS SO ORDERED.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE